**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TV TOKYO CORPORATION, | |
| Plaintiff, | |
| v. | Civil Action No. 26-cv-2040 |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, | |
| Defendants. | |

## COMPLAINT

TV Tokyo Corporation ("Plaintiff" or "TV TOKYO"), by and through its undersigned counsel, hereby files this Complaint against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations identified on Schedule A hereto (collectively, "Defendants") and alleges as follows:

I.     **Jurisdiction And Venue**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., the Copyright Act, 17 U.S.C. § 101, *et seq*., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(a), and this Court may properly exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) since each of the Defendants directly targets consumers in the United States, including New York, through at least the fully interactive commercial internet stores

1

operating under the Defendant aliases and/or the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Seller Aliases").

3.      Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(1)(3), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this Judicial District, and derive substantial revenue from business transactions in New York and in this Judicial District or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

4.      In addition, Defendants' illegal counterfeiting and infringement actions caused injury to Plaintiff in New York and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in New York and this judicial District.

5.      For example, Defendant Internet Stores accept orders of Counterfeit Products from and offer to ship to New York addresses located in this Judicial District.

6.      Moreover, upon information and belief, Defendants are systematically directing and targeting their business activities at consumers in the U.S., including those in New York, in this Judicial District, through accounts (the "User Account(s)") with online marketplace platforms such as PayPal and Shop Pay, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the U.S., including New York (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products, and to place orders

for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including New York (and more particularly, in this Judicial District).

## II.    **Parties**

7.     Plaintiff TV Tokyo Corporation is a leading Japanese content producer and broadcaster of movies and videos with a particular strength in animation, with a principal place of business at headquartered at Roppongi Grand Tower, 3-2-1 Roppongi, Minato-ku, Tokyo 106-8007, Japan.

8.     TV TOKYO's most famous creation is NARUTO, one of the best-selling Japanese manga series in history, written and illustrated by renowned author and artist, Misashi Kishimoto. 250 million copies of the NARUTO manga series have been circulated worldwide in 46 countries and regions. English translations of the NARUTO manga series have consistently appeared on the USA Today and The New York Times bestsellers lists. TV TOKYO co-produced and distributes the NARUTO franchise of animated television series and theatrical films together with Shueisha Inc. TV TOKYO develops, markets, sells and distributes NARUTO brand products. TV TOKYO is the official source of NARUTO products:



https://www.tv-tokyo.co.jp/anime/naruto/index2.htm

9.      This action has been filed to combat online trademark and copyright infringers who trade upon Plaintiff's reputation and goodwill and valuable intellectual property by selling and/or offering for sale products, hereinafter referred to as the "NARUTO Products" in connection with the federally registered trademarks and copyrights.

10.     Plaintiff TV TOKYO is the exclusive licensee of U.S. Trademark Registration Nos. 2,953,009; 3,280,366; 3,726,754; 3,229,574; 4,485,182; and 5,612,754 (the "NARUTO Marks").

| Trademark | Registration No. | Goods and Services |
|---|---|---|
| NARUTO | 3,726,754 | For: Pre-recorded motion picture films and television programs featuring animated performances recorded on video and audio discs, and DVDs; pre-recorded video and audio discs, and DVDs, all featuring music and animated performances; musical video recordings and musical sound recordings featuring music and animated performances; computer game software; pre-recorded video and audio discs, DVDs featuring games; video game software; downloadable game software; downloadable computer games; computer game software and manuals sold as |

| | | |
|---|---|---|
| | | a unit; interactive video game programs; video game software; interactive computer game programs; software for playing video games; computer video game software and manuals sold as a unit; interactive entertainment software for playing video games; downloadable computer game software; downloadable interactive entertainment software for playing computer games in Class 009. |
| | | For: Publications, namely, graphic novels, fiction books, comic books, comic magazines, magazines related to animated fiction, art books, children's books, children's story books, coloring books, and printed instructional manuals and strategy guides in the field of animated entertainment and computer games; school and office supplies, namely, pens, pencils and markers; calendars; notebooks; posters; school and office supplies; stationery and stationery type portfolios; sticker books and stickers; trading cards; collectible cards; printed art scrolls in Class 016. |
| | | For: Men's, women's, and children's clothing, namely, shirts, t-shirts, sweatshirts, vests, wristbands; outerwear, namely, jackets, gloves; headwear, namely, hats, caps, head bands; neckwear; loungewear, namely, pajamas, nightshirts; undergarments, namely, underwear and boxer shorts; masquerade costumes, masquerade costumes with masks sold in connection therewith in Class 025. |
| | | For: Toys, namely, play figures and accessories therefor, toy action figures and accessories therefor, toy figures, toy statuettes and toy figurines made of molded plastic, cases for play accessories, mechanical action toys, dolls and accessories therefor, doll play sets, doll clothing and costumes, play sets for action figures, role-playing game sets, plush toys, stuffed toys, card games, collectable card games, playing cards, toy swords, target |

| | | |
|---|---|---|
| | | games, action skill games, collectable game cards and trading game cards in Class 028. |
| | | For: Entertainment services, namely, production and distribution of motion pictures, films and television programs, in the fields of animated entertainment; entertainment services, namely, distribution of animated audio-visual works via the internet and television; publication of books, magazines, cartoons, comic strips and comic books; fan club services; electronic game services provided on-line from databases or web sites on the Internet; providing online electronic publications, namely, newsletters, graphic novels, fiction books, and comic books, in the fields of comics, graphic novels, and animated entertainment; production of animated entertainment, namely, motion pictures and television programs; providing comics via the Internet; providing non-downloadable games via the Internet; providing information online regarding animated entertainment, computer games and comics in Class 041. |
| NARUTO | 3,280,366 | Stationery in Class 016; hand-operated action toys; toy action figures; dolls; and card games in Class 028; Entertainment services, namely, providing comics via the Internet, providing non-downloadable games via the Internet; providing information on-line relating to computer games and comics in Class 041 |
| NARUTO | 2,953,009 | Comic books in Class 016. |
| NARUTO | 3,229,574 | Pre-recorded DVDs featuring animated performances, video game DVDs and video game discs in Class 009; Graphic novel, printed art scroll in Class 016; |

| | | T-shirts, sweatshirts, jackets, headbands, caps, underwear, wristbands, gloves in Class 025. |
| --- | --- | --- |

11.     The NARUTO Marks registrations are valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065. The registrations constitute prima facie evidence of validity and of Plaintiff's exclusive right to use the NARUTO Marks pursuant to 15 U.S.C. § 1057(b).

12.     True and correct copies of the registration certificates for the NARUTO Marks are attached as Exhibit 1.

13.     In addition, TV Tokyo is the current owner of several copyright registrations including, but not limited to, the following Copyright Registration Nos. TV TOKYO is the owner of the following Copyright Registration Nos. PA00002277887; PA00002431062; and PA00002276002 (collectively the "NARUTO Works").

| Plaintiff's Registered Works | |
|---|---|
| **Title of Work** | **Screenshots That Contain Certain Iconic Elements** |
| NARUTO (#353): The Tale of Jiraiya the Gallant<br><br>**Reg number**<br>(PA 2-276-002)<br><br>**First Published**<br>(October 29, 2009) |  |

NARUTO (#114): Good-Bye Old Friend…!I'll Always Believe You!

**Reg number**
(PA 2-277-887)

**First Published**
(December 15, 2004)



NARUTO Enter:
Naruto Uzumaki!

**Reg number**
(PA 2-431-062)

**First Published**
(February 15, 2007)



14.     True and correct copies of the registration certificates for the NARUTO Works are attached as Exhibit 2.

15.     The NARUTO Trademarks and Copyrights have been the subject of substantial and continuous marketing and promotion by Plaintiff.  Plaintiff has and continues to widely market and promote the NARUTO Trademarks and Copyrights in the industry and to consumers. Plaintiff's promotional efforts include — by way of example, but not limitation — substantial print media, the NARUTO website and social media sites, and point of sale materials.

16.     The NARUTO Marks and Works have been continuously used and have never been abandoned. The NARUTO trademark and copyright registrations are valid, subsisting, and in full force and effect. The registrations of the NARUTO Marks constitute prima facie evidence of their validity pursuant to 15 U.S.C. §1057(b).

17.     Plaintiff has invested substantial time, money, and effort in building up, developing, advertising, and otherwise promoting the NARUTO Marks and Works. As a result, products associated with the NARUTO Marks and Works are recognized and exclusively associated by consumers and the public as being products sourced from Plaintiff.

18.     Plaintiff has made efforts to protect its interests in and to the NARUTO Marks and Works. No one other than Plaintiff and its licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the NARUTO Marks and/or Works without the express written permission of Plaintiff.

19.     Defendants are individuals and business entities who, upon information and belief, reside in various foreign jurisdictions. Defendants conduct business throughout the United States, including within New York and in this judicial district, through the operation of the fully

interactive commercial websites and online marketplaces operating under the Seller Aliases. Each Defendant targets the United States, including New York, and has offered to sell and, on information and belief, has sold and continues to sell unauthorized and infringing versions of the NARUTO Products to consumers within the United States, including New York and in this judicial district.

## III.    **Factual Background**

20.      Prior to the rise of anonymous online marketplaces, Plaintiff successfully enforced its intellectual property rights against identifiable infringers and counterfeiters through traditional legal channels. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has made it nearly impossible for policing actions to be undertaken since availing itself of takedown procedures to remove infringing products would be futile and commercially unreasonable given the sophisticated and coordinated mass counterfeiting operation that is occurring over the Internet. The aggregated effect of the mass counterfeiting that is taking place has overwhelmed Plaintiff and its ability to police its rights against the hundreds of anonymous defendants which are selling illegal counterfeit and infringing products at prices below the cost of an original NARUTO Product:

### **COUNTERFEIT/INFRINGING LISTINGS**

| REMOVED FROM PUBLIC DOCKET |
| --- |
| REMOVED FROM PUBLIC DOCKET |

21.     The above examples evidence a cooperative counterfeiting network using fake e-commerce storefronts designed to appear to be selling authorized products. To be able to offer the counterfeit and/or infringing products at a price substantially below the cost of the original, while still being able to turn a profit after absorbing the cost of manufacturing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain.

22.     In an effort to illegally profit from the creative content of the NARUTO Marks and Works, Defendants have created numerous Seller Aliases and have designed them to appear to be selling authorized NARUTO Products.

23.     Plaintiff has suffered and continues to suffer immediate and irreparable harm through loss of control over its valuable intellectual property, diminution of reputation and goodwill, loss of quality control, and impairment of licensing relationships and opportunities, for which there is no adequate remedy at law, thereby necessitating both immediate injunctive relief and monetary damages.

24.     The systematic and coordinated mass counterfeiting and infringement campaign has caused, and continues to cause, substantial and irreparable harm to Plaintiff and its ability to police its rights against the hundreds and thousands of anonymous online sellers who are selling counterfeit and infringing products.

25.     To be able to offer the infringing products at a price substantially below the cost of original, while still being able to turn a profit after absorbing the cost of manufacturing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As a recent Homeland Security report confirms, infringers act

in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal pirating network[1].

26.    The Seller Aliases share distinctive identifying characteristics and patterns, including identical design elements and similarities in the unauthorized products offered for sale, establishing a coordinated network of related operations arising from the same series of transactions or occurrences. Defendants deliberately employ sophisticated technological means and aliases to evade detection and liability by systematically concealing their true identities and the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables infringers to stymie authorities. *Id.* at 5, 11, 12.

27.    In a 2024 report by the Office of the United States Trade Representative (USTR) titled *2024 Review of Notorious Markets for Counterfeiting and Piracy*, counterfeit and pirated goods from China (including trans-shipments via Hong Kong) accounted for 84% of the value and 90% of the total quantity of counterfeit and pirated goods seized by U.S. Customs and Border Protection (CBP) in 2023. The report notes that in prior years, online piracy cost the U.S. economy an estimated $29.2 billion in lost revenue. The report also highlights how e-commerce and social media platforms facilitate counterfeit sales via online seller listings, influencer promotion, links to fake sites, and social media driven traffic[2].

28.    Plaintiff's investigation shows that the telltale signs of an illegal counterfeiting and infringement scheme are present in the instant action. For example, Schedule A shows the use of

---

[1] *See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19.
[2] *See 2024 Review of Notorious Markets for Counterfeiting and Piracy*, 89 Fed. Reg. 66,754 (USTR Docket No. 2024-0013) (Oct. 2, 2024). 2024 Review of Notorious Markets for Counterfeiting and Piracy | U.S. Chamber of Commerce

store names by the Seller Aliases that employ no normal business nomenclature and, instead, have the appearance of being made up, or if a company that appears to be legitimate is used, online research shows that there is no known address for the company. Thus, the Seller Aliases are deliberately operating deceptive online storefronts specifically designed to mislead consumers by appearing to sell genuine NARUTO Products, while knowingly selling unauthorized, inferior counterfeit imitations of Plaintiff's NARUTO Products that illegally utilize the NARUTO Marks and Works ("Infringing Products").

29.    Screenshot evidence showing each Defendant on Schedule A selling Infringing Products is attached as Exhibit 3.

30.    The Seller Aliases also share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting and infringement operations.

31.    The Infringing Products for sale through the Seller Aliases bear similarities and indicia of being related to one another, demonstrating that the Infringing Products were manufactured by and sourced from a coordinated network, and that, upon information and belief supported by substantial evidence, Defendants constitute an organized group of infringers operating in deliberate concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products.

32.    The Seller Aliases intentionally conceal their identities and the full scope of their counterfeiting and infringement operations in an effort to deter Plaintiff from learning

Defendants' true identities and the exact interworking of Defendants' illegal operations. Defendants often go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Seller Aliases.

33.    Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Amended Complaint, as well as other unknown fictitious names and addresses. Such Seller Alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their massive infringement operation and to avoid being shut down.

34.    In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases involving online infringers systematically employ a variety of sophisticated tactics specifically designed to circumvent intellectual property enforcement efforts and evade detection. For example, infringers like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Infringers also deliberately structure their shipments in small quantities via international mail as part of a calculated strategy to evade detection and enforcement by U.S. Customs and Border Protection, demonstrating their awareness of and intent to circumvent legal restrictions.

35.    A 2024 U.S. Customs and Border Protection report on seizure statistics indicated that the vast majority of Intellectual Property Rights (IPR) seizures continue to take place within the express consignment and mail shipping methods and in 2024, 97% of IPR seizures in the cargo

environment occurred in the de minimis shipments. U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics* FY 2024 at 2[3].

36.     Further, infringers such as Defendants deliberately maintain a complex network of multiple credit card merchant accounts and third-party payment processing accounts, including PayPal, LLC ("PayPal") accounts, strategically concealed behind layers of payment gateways, specifically designed to evade detection and continue their infringing operations despite Plaintiff's legitimate enforcement efforts.

37.     Upon information and belief, Defendants systematically maintain offshore bank accounts and deliberately transfer funds from their PayPal accounts to these offshore accounts outside the jurisdiction of this Court, demonstrating a calculated scheme to shield their illicit profits from legal enforcement and recovery.

38.     Defendants, without any authorization or license from Plaintiff, have knowingly, willfully, and deliberately counterfeited Plaintiff's NARUTO Marks and infringed Plaintiff's NARUTO Works in connection with the systematic advertisement, distribution, offering for sale, and sale of Infringing Products into the United States, including within this judicial district of New York, over the Internet. Each Seller Alias offers shipping to the United States, including New York, and, on information and belief, each Defendant has offered to sell Infringing Products into the United States, including New York.

---

[3] *See* U.S. Customs & Border Protection, FY 2024 IPR Seizure Statistics, (Jan. 16, 2025). FY 2024 IPR Seizure Statistics | U.S. Customs and Border Protection

## **Count I - Trademark Infringement and Counterfeiting**
### **(15 U.S.C. § 1114)**
### **[Against Certain Defendants Designated in Schedule A]**

39.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

40.     This is a trademark infringement action against certain Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered NARUTO Marks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The NARUTO Marks are distinctive. Due to Plaintiff's substantial and continuous investment in quality control, brand management, and product development, consumers have come to expect, rely upon, and associate the highest quality exclusively with Plaintiff and authentic NARUTO Products offered, sold, or marketed under the NARUTO Marks.

41.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its NARUTO Marks and with knowledge that Defendants' Infringing Products bear counterfeit marks, these Defendants intentionally reproduced, copied, and/or colorably imitated the NARUTO Marks and used spurious designations that are identical with, or substantially indistinguishable from, the NARUTO Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products.

42.     These Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Infringing Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with willful and reckless disregard of Plaintiff's exclusive rights in and to the NARUTO Marks through their systematic and deliberate participation in such unlawful activities.

18

43.     These Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the NARUTO Marks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of these Defendants' Infringing Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive consumers, the public and the trade into believing that the Infringing Products sold by these Defendants originate from, are associated with, or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

44.     These Defendants' unauthorized use of the NARUTO Marks on or in connection with the Infringing Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff, and with deliberate intent to unfairly benefit from and damage the substantial and incalculable goodwill Plaintiff has developed in the NARUTO Marks through years of quality control and significant investment.

45.     These Defendants' actions constitute willful counterfeiting of the NARUTO Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), thus entitling Plaintiff to relief pursuant to § 1116(d), and §§ 1117(a)-(c).

46.     These Defendants' continued, knowing, and willful use of the NARUTO Marks without Plaintiff's consent or authorization constitutes intentional infringement of the NARUTO Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

47.     Plaintiff has no adequate remedy at law, and if these Defendants' actions are not immediately enjoined, Plaintiff will continue to suffer immediate and irreparable harm to its

reputation, market position, and the substantial goodwill associated with the NARUTO Marks, causing damages that are difficult to calculate with precision.

48.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by these Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit NARUTO Products.

### Count II - False Designation of Origin, Passing Off & Unfair Competition
### (15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))
### [Against Certain Defendants Mentioned in Count I]

49.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

50.     Defendants' promotion, marketing, offering for sale, and sale of infringing NARUTO Products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' infringing products by Plaintiff.

51.     By using the NARUTO Marks in connection with the sale of unauthorized products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized products.

52.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

53.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake, and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff, its NARUTO Products, and NARUTO Marks.

54.    Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

### Count III - Copyright Infringement
**(17 U.S.C. § 501(a))**
**[Against All Defendants Designated in Schedule A]**

55.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

56.    Plaintiff's copyrights have significant value and have been produced and created at considerable expense.

57.    Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the copyrighted NARUTO Works, including derivative works. The NARUTO Works are the subject of valid copyright registrations. Exhibit 2.

58.    Upon information and belief, Defendants had direct access to and knowledge of the copyrighted works through their widespread commercial availability in the marketplace, Plaintiff's extensive marketing and promotion, and through Plaintiff's normal business activities. After accessing the NARUTO Works, Defendants willfully and knowingly created unauthorized copies of the copyrighted works without Plaintiff's consent and engaged in systematic and widespread acts of infringement.

59.    Plaintiff is informed and believes and thereon alleges that Defendants further infringed Plaintiff's copyrights by making or causing to be made derivative works and by producing and distributing reproductions without Plaintiff's permission.

60.    Each Defendant, without the permission or consent of the Plaintiff, has and continues to sell online infringing copies and derivative works of the NARUTO Works. Each

Defendant has violated Plaintiff's exclusive rights of reproduction and distribution. Each Defendant's actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. § 101 *et seq.*).

61.    Further, as a direct and proximate result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyrighted NARUTO Works. Plaintiff is entitled to full disgorgement of all of Defendants' profits directly and indirectly attributable to their infringement of the NARUTO Works, including any profits from related merchandise and derivative works, pursuant to 17 U.S.C. § 504(b).

62.    The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of the Plaintiff.

63.    As a result of each Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to relief pursuant to 17 U.S.C. § 504.

64.    The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyright and ordering that each Defendant destroy all unauthorized copies. Defendants' copies, plates, and other embodiment of the copyrighted works from which copies can be reproduced should be impounded and forfeited to Plaintiff as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to Plaintiff pursuant to 17 U.S.C § 503.

**IV.**    **Prayer For Relief**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)    That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.  using the NARUTO Marks and Works or any reproductions, copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized NARUTO Product or is not authorized by Plaintiff to be sold in connection with the NARUTO Marks and Works;

b.  passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the NARUTO Marks and Works;

c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit and Infringing NARUTO Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.  further infringing the NARUTO Marks and Works and damaging Plaintiff's goodwill;

e.  otherwise competing unfairly with Plaintiff in any manner;

f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear the NARUTO Marks or which are derived from Plaintiff's NARUTO Works;

23

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Seller Aliases, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which bear the NARUTO Marks or which are derived from Plaintiff's NARUTO Works;

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with all aspects of the injunctive relief ordered by this Court;

3) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing, and Yahoo, web hosts for the Seller Aliases, and online marketplace account registrars, shall:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of products not authorized by Plaintiff, which bear the NARUTO Marks, or which are derived from the NARUTO Works, including but not limited to any accounts associated with the Defendants listed on Schedule A and any affiliated, related, or successor accounts;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiff, which bear the NARUTO Marks, or which are derived from Plaintiff's copyrights in the NARUTO Works; and

    c.  take all steps necessary to prevent links to the Seller Aliases identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Seller Aliases from any search index;

    4)    That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' willful and unlawful acts herein alleged, and that the amount of damages for infringement be trebled pursuant to 15 U.S.C. § 1117(a) due to the exceptional nature of this case and Defendants' willful infringement;

    5)    In the alternative, that Plaintiff be awarded statutory damages up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c)(2);

    6)    For Judgment in favor of Plaintiff against Defendants that they have:

    a.  willfully infringed Plaintiff's rights in its federally registered copyrights pursuant to 17 U.S.C. § 501; and b) otherwise injured Plaintiff's business reputation and goodwill by Defendants' acts and conduct set forth in this Amended Complaint;

    7)    For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff, in an amount to be determined at trial;

    8)    That Plaintiff be awarded its reasonable attorneys' fees and costs; and

    9)    Award such other and further relief, including temporary, preliminary and permanent injunctive relief, as this Court may deem just and proper under the circumstances and as allowed by law.

Dated: March 12, 2026

Respectfully submitted,

*/s/ Shengmao Mu*
Shengmao Mu
NY No. 5707021
**WHITEWOOD LAW PLLC**
57 West, 57th Street, 3rd and 4 Floors
New York, NY, 10019
Telephone: (917) 858-8018
Email: smu@whitewoodlaw.com

*Counsel for Plaintiff*